Nos. 23-10008, 23-10536, and 23-10836

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

CHARLENE CARTER,

*Plaintiff-Appellee/Cross-Appellant,*

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,

*Defendants-Appellants/Cross-Appellees.*

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

SOUTHWEST AIRLINES CO.,

*Defendant-Appellants.*

---

On Appeal from the United States District Court for the
Northern District of Texas, No. 3:17-CV-02278-X
Hon. Brantley Starr, *United States District Judge*

---

## LOCAL 556, TRANSPORT WORKERS
## UNION OF AMERICA'S OPENING BRIEF

Adam S. Greenfield – *Counsel for Defendant-Appellant Local 556, TWU*
Law Offices of Cloutman & Greenfield, PLLC
6217 Bryan Parkway
Dallas, TX 75214
State Bar No. 240 754 94
Email: agreenfield@candglegal.com
Phone: 214-642-7486

# CERTIFICATE OF INTERESTED PERSONS

**Nos. 23-10008 & 23-10536, *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Co.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

## I.    Defendant-Appellant Local 556, Transport Workers Union of America

| Name | Interest |
|------|----------|
| Adam S. Greenfield | Counsel for Defendant-Appellant |
| Law Offices of Cloutman & Greenfield, P.L.L.C. | Firm of Defendant-Appellant's Counsel |

## II.    Defendant-Appellant Southwest Airlines Co.

| Name | Interest |
|------|----------|
| Norton Rose Fulbright US LLP | Firm of Defendant-Appellant's Counsel |
| Reed Smith LLP | Firm of Defendant-Appellant's Counsel |
| Ryan Law Partners LLP | Firm of Defendant-Appellant's Counsel |
| Sheppard Mullin Richter & Hampton LLP | Firm of Defendant-Appellant's Counsel |
| Skadden, Arps, Slate, Meagher & Flom LLP | Firm of Defendant-Appellant's Counsel |

III.     **Plaintiff-Appellee Charlene Carter**

| <u>Name</u> | <u>Interest</u> |
|---|---|
| Matthew B. Gilliam | Counsel for Plaintiff-Appellee's |
| Milton L. Chappell | Counsel for Plaintiff-Appellee's |
| National Right to Work Legal Defense Foundation | Firm of Plaintiff-Appellee's Counsel |
| Bobby G. Pryor | Counsel for Plaintiff-Appellee's |
| Matthew D. Hill | Counsel for Plaintiff-Appellee's |
| Pryor & Bruce | Firm of Defendant-Appellee's Counsel |
| David E. Watkins | Counsel for Plaintiff-Appellant |
| Jenkins & Watkins, PC | Firm of Defendant-Appellant's Counsel |

Dated: October 30, 2023          */s/ Adam S. Greenfield*
                                                Adam S. Greenfield

                                                *Counsel for Defendant-Appellant Local 556, TWU*

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellant Local 556, Transport Workers Union of America requests oral argument. The district court's judgment against Local 556 and Southwest Airlines strips away common decency in the workplace and union arenas, turning Title VII of the Civil Rights Act of 1964 and the Railway Labor Act into a shield immunizing hostile and abusive workplace behavior. The judgment rests on flawed jury instructions and insufficient evidence.

The judgment also conflates the idea of an employer and union, and who is financially responsible upon the wrongful termination of an employee who is an agency fee objector/non-union member.

Oral argument is likely to assist the Court in deciding this novel appeal. *See, e.g.*, *Brotherhood of Locomotive Engineers v. Union Pacific Railroad*, 31 F.4th 337 (5th Cir. 2022) (argument in RLA case); *Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d 374 (5th Cir. 2015) (argument in Title VII case).

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ……………………………... 1-2

STATEMENT REGARDING ORAL ARGUMENT ………………………… 3

TABLE OF CONTENTS …………………………………………………... 4-6

TABLE OF AUTHORITIES …………………………………………..7-10

JURISDICTIONAL STATEMENT …………………………………………… 11

STATEMENT OF THE ISSUES ………………………………………… 12

INTRODUCTION/SUMMARY OF ARGUEMENT ……………………… .13-14

STATEMENT OF FACTS …………………………………………...…... 15-19

      A.      Carter sends fellow flight attendant, and Local 556 Union President Audrey Stone, hostile and graphic direct messages on Facebook…………………………………………………..15-16

      B.      Southwest investigates Carter's behavior and fires her for it…...16-18

      C.      Carter, represented by Local 556, grieves her termination, and the arbitrator sides with Southwest…………………………………18-19

STANDARD OF REVIEW ……………………………………………… 19-20

ARGUMENT AND AUTHORITIES ………………………………………... 20-36

I.      The jury's verdict on Carter's Railway Labor Act claim must be reversed as the district court incorrectly instructed the jury that the RLA protects obscene and abusive activity…………………………………………20-25

    A. The RLA does not protect obscene and abusive activity ……………… 21

---

**TABLE OF CONTENTS (cont'd.)**                    **Page(s)**

B. The instruction was legally wrong and prejudiced Local 556 ……….... 21-25

    1. The incorrect jury instruction …………………………….. 22-24

    2. Carter's counsel exploits the prejudice ………………….... 24

    3. If the speech is not "protected," there is no evidence that Local 556 violated its Duty of Fair Representation to Carter, undermining the Jury's liability finding on this issue …………………………………... 24-25

II.  Assuming, *arguendo*, that the Court's incorrect RLA jury instruction does not taint the entire trial, under Title VII, Carter failed to prove religious belief based discrimination as a matter of law. Further the Court refused to give Local 556 an undue hardship instruction while Carter's religious practice does not fall definitionally within the "religion" protected by Title VII ………………………………………………………….…….. 25-34

A. The District Court erred in instructing the jury that Local 556 violated Carter's Title VII rights by "attempting to cause" Carter's discharge .. 26-27

    1. The District Court's Judgment assessing damages against Local 556 is not supported by law ……………………………………….. 26-27

B. Carter's inadequate religious <u>belief</u> claims and evidence …………….. 27-31
  1.  Carter failed to introduce sufficient direct and/or circumstantial evidence of religious belief discrimination ………………………………...28-31

    a. Carter fails to present any direct evidence of discrimination …………………………………………………28-29
    b. Carter fails to present sufficient circumstantial evidence that she was treated differently than another "similarly situated" employee "under nearly identical circumstances.".…….. 30-31

C. Carter's inadequate religious <u>practice</u> claims and evidence ………….. 31-34

III.  The District Court's Permanent Injunction is Overly broad and Vague, and she be overturned as such ……………………………………….. 34-36

# TABLE OF CONTENTS (cont'd.)

**Page(s)**

CONCLUSION …………………………………………………………. 36

CERTIFICATE OF SERVICE ………………………………………… 37

CERTIFICATE OF COMPLIANCE ………………………………… 38

# TABLE OF AUTHORITIES

Cases                                                                Page(s)

*Alkhawaldeh v. Dow Chemical Co.*,
851 F.3d 422 (5th Cir. 2017)…………………………………………… 34, 35

*Atlantic Steel Co.*,
245 NLRB 814 (1979) …………………………………………………… 27

*Baisden v. I'm Ready Products, Inc.*,
693 F.3d 491 (5th Cir. 2012) …………………………………………24

*Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*,
394 U.S. 369 (1969)……………………………………………………...26

*Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*,
394 U.S. 369 (1969 …………………………………………………... 26

*Burlington Northern R.R.*,
481 U.S. at 437………………………………………………………... 39

*Burlington Northern & Santa Fe Ry. v. Brotherhood of Maintenance of Way Emples.*,
1998 U.S. Dist. LEXIS 22879, *11) ………………………………….. 39

*Clark v. Champion National Security, Inc.*,
952 F.3d 570 (5th Cir. 2020) ………………………………………….. 33

*Daimler Chrysler Corp.*,
344 NLRB 1324, 1329 (2005) …………………………………………… 27

*Dediol v. Best Chevrolet, Inc.*,
655 F.3d 435 (5th Cir. 2011) ………………………………………….... 36

*Dixon v. The Hallmark Companies, Inc.*,
627 F.3d 849 (11th Cir. 2010) …………………………………………… 29

*Doe v. Veneman*, 380 F.3d 807, 818 (U.S. 2004) ……………………………38, 39

*Equal Employment Opportunity Commission*
*v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ………………………………………………… 29

*E.T. v. Paxton,* 19 F.4th 760, 769 (5th Cir. 2021) …………………………… 38, 39

*Evance v. Trumann Health Services, LLC*,
719 F.3d 673 (8th Cir. 2013) …………………………………….... 33

*Geraci v. Moody-Tottrup, International, Inc.*,
82 F.3d 578 (3d Cir. 1996) ……………………………………………… 33

*Groff v. DeJoy*,
143 S. Ct. 2279 (2023) …………………………………………………36

*Held v. American Airlines, Inc.*,
No. 06-cv-4240, 2007 WL 433107
(N.D. Ill. Jan. 31, 2007) ……………………………………………….. 27

*Herster v. Board of Supervisors of Louisiana State University*,
887 F.3d 177 (5th Cir. 2018) …………………………………….. 32, 34

*Janvey v. Dillon Gage, Inc. of Dallas*,
856 F.3d 377 (5th Cir. 2017) ……………………………………... 23

*Jowers v. Lincoln Electric Co.*,
617 F.3d 346 (5th Cir. 2010) ……………………………………… 23

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ……………………………………… 25

*Krystek v. University of Southern Mississippi*,
164 F.3d 251 (5th Cir. 1999) …………………………………….... 31, 32

*Leiser Constr., LLC*,
349 NLRB 413, 415 (2007) ……………………………………….. 27

*Linn v. United Plant Guard Workers of America, Local 114*,
383 U.S. 53 (1966) …………………………………………………….. 26, 27

*Luster v. Illinois Department of Corrections*,
652 F.3d 726 (7th Cir. 2011) …………………………………………………. 32

*McCoy v. City of Shreveport*,
492 F.3d 551 (5th Cir. 2007) …………………………………………………. 34

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) …………………………………………………….. 16, 32, 34

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
934 F.3d 447 (5th Cir. 2019) ……………………………………………….. 34

*Nobach v. Woodland Village Nursing Center, Inc.*,
799 F.3d 374 (5th Cir. 2015) ………………………………………… 23, 32

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ………………………………………………... 37

*Portis v. First National Bank of New Albany*,
34 F.3d 325 (5th Cir. 1994) …………………………………………………. 32

*Reef Industries v. National Labor Relations Board*,
952 F.2d 830 (5th Cir. 1991) ………………………………………………..... 25

*Sandstad v. CB Richard Ellis, Inc.*,
309 F.3d 893 (5th Cir. 2002) ………………………………………………... 32, 34

*Tagore v. United States*,
735 F.3d 324 (5th Cir. 2013) …………………………………………………. 36

*Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*,
489 U.S. 426 (1989) …………………………………………………………… 26, 27

*United States v. CITGO Petroleum Corp.*,
801 F.3d 477 (5th Cir. 2015) …………………………………………………. 23

*University of Texas Southwestern Medical Center v. Nassar*,
570 U.S. 338 (2013) …………………………………………………………... 29

*Vaughn v. Woodforest Bank*,
665 F.3d 632 (5th Cir. 2011) ………………………………………………... 34, 35

CONSTITUTION AND STATUTES

28 U.S.C. §1291……………………………………………………………15

28 U.S.C. §1331……………………………………………………………... 15

National Labor Relations Act,
29 U.S.C. § 151 *et seq* ……………………………… 15-18, 24-27, 29, 30, 37, 38, 40

Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq* ………………………... 15-18, 25, 29, 31- 33, 35- 38, 40

Railway Labor Act, 45 U.S.C. § 151 *et seq* ……… *15-18, 24-26, 29, 30, 37, 38, 40*

**Other Rules and Authorities**

Fifth Circuits Pattern Jury Instructions ………………………………………….. 30

Rule 65 of the Federal Rules of Civil Procedure ………………………….. 65

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because Plaintiff-Appellee/Cross-Appellant Charlene Carter claims violations of federal law—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Railway Labor Act, 45 U.S.C. § 151 *et seq.*

On December 5, 2022, the district court entered judgment executing the jury verdict against Defendant-Appellant Local 556, Transport Workers Union of America. ROA.23-10836.8953-8955. On January 4, 2023, Local 556 timely appealed. ROA.23-10082-83

This Court has jurisdiction to review the judgment because they are final decisions under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Whether the district court erred in instructing the jury that RLA § 152 Third and Fourth protect all organizing activity, even if it is abusive.

2.    Whether Carter's failure to introduce direct evidence of discrimination, or comparator evidence necessary to show pretext under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires judgment as a matter of law for Local 556 on her claim of religious-belief-based discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).

3.    Whether the district court erred in denying Local 556's instructions to the jury regarding an undue hardship defense pertaining to Carter's claims against Local 556 for failure to accommodate her religious practices.

4.    Whether the district court erred in assessing vague and overbroad injunctive relief against Local 556, usurping existing laws under Title VII and the RLA.

5.    Whether or not Local 556 is liable for backpay and/or pre/post judgment interest on those damages when Local 556 was not Carter's employer and did not impact Southwest's decision to terminate Carter's employment.

## INTRODUCTION/SUMMARY OF ARGUMENT

Southwest and Southwest alone made the decision to fire flight attendant Charlene Carter. ROA.23-10008.12563, ROA.23-10008.12579. Carter was terminated for sending her coworker, and Local 556 Union President Audrey Stone, hostile and graphic messages with videos and pictures about abortion, and for posting those videos and pictures publicly on Facebook while identifiable as a Southwest employee. "You truly are Despicable," Carter wrote Stone, sending a photo of a bloody aborted fetus linked to a graphic video. ROA.23-10836.14750. In another message with bloody graphics, Carter accused her co-worker of "supporting this Murder." ROA.23-10836.14749. Finding Carter's messages "incredibly disturbing," Despite being personally pro-life herself, Stone reported Carter to Southwest's human resources department. ROA.23-10836.14774. ROA 23-10008.14276. Southwest conducted an investigation, concluding that Carter's conduct violated its policies designed to ensure civility in the workplace, firing Carter. ROA.23-10836.15007.

After an arbitrator sided with Southwest and Local 556, Carter sued, claiming that Local 556 caused or attempted to cause her termination because of her religious belief and practice, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and for engaging in protected union activity, in violation of the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq.

The district court, conflating practice and belief, sent the belief-based claim to the jury even though Carter had *no evidence* that Local 556 President Stone held animus toward pro-life Christians or that Local 556 treated similarly situated non-pro-life-Christians more favorably. As to religious practice, the court erroneously and blanketly refused to instruct the jury that her religious practice could possibly lose Title VII protection if it caused Local 556 an "undue hardship". The court further errored by sending the RLA retaliation claim to the jury with a flawed instruction, instructing them that abusive speech was indeed protected. The jury found for Carter, and the court imposed judgment.

Finally, the Court erred in allowing the jury to assess damages against Local 556 for backpay and/or pre/post judgment interest on those damages when Local 556 was not Carter's employer and did not impact Southwest's decision to terminate Carter's employment. Ultimately, the Court exacted vague and overbroad injunctions against Local 556, in an attempt to control all religious discrimination claims against Local 556 and Southwest, in perpetuity.

Due to the numerous and prejudicial errors by the District Court, the judgment and verdict should be vacated and reversed.

# STATEMENT OF THE CASE

## I. Factual Background[1]

### A. Carter sends fellow flight attendant, and Local 556 Union President Audrey Stone, hostile and graphic direct messages on Facebook.

Over the years, Carter sent dozens of printed pages worth of anti-union rhetoric, including personal attacks of dishonesty and fraud, to fellow flight attendant and then Union President, Audrey Stone. The messages were sent via Facebook direct message to Stone. Stone never replied, nor did she report Carter for what Stone believed to be protected speech. ROA.23-10008.14103-45.

However, in January 2017, Carter's messaging and tone changed. Carter became aware that some members of Local 556, the exclusive bargaining representative for Southwest flight attendants, were attending the Women's March in Washington, DC. ROA.23-10836.11407-11408, 12492. Believing this to be a pro-abortion rally, Carter became incensed that her union dues could possibly be paying for the trip. ROA.23-10836.12493.

The following month, in February 2017, the vitriolic Carter begins sending a series of hostile and graphic direct messages, via Facebook, to Stone. ROA.23-10836.11407, 14749-14752. Carter's first message featured a graphic image of a fetus in a metal bowl that linked to a video about abortion. She wrote: "TWU-

---

[1] As co-defendants, Local 556 agrees and incorporates Southwest's Factual and Procedural background of the case. For ease of reading, Local 556 is incorporating their recitation into their briefing, sans information pertaining to Southwest's appeal of contempt.

AFL-CIO and 556 are supporting this Murder." ROA.23-10836.14749. Carter continues, sending another message with an image of an aborted fetus in the palm of a hand, linking to a video described as "An aborted baby alive even after the abortion." ROA.23-10836.14750. Carter wrote: "This is what you supported during your Paid Leave with others at the Women's MARCH in DC....You truly are Despicable in so many ways... cant wait to see you back on line." *Id.*

Continuing down this path, Carter proceeds to send Stone a picture of women wearing hats with explicit likenesses of vaginas, writing: "Did you all dress up like this...", followed by a link to an article about an organizer of the Women's March, commenting, "you are nothing but a SHEEP in Wolves Clothing or you are just so un-educated you have not clue who or what you were marching for! Either way you should not be using our DUES to have Marched in this despicable show of TRASH!" ROA.23-10836.14751. and 23-10836.14752.

Carter continued to send Stone similar messages until Stone reported Carter to her manager. ROA.23-10836.14774-14775.

## B. Southwest investigates Carter's behavior and fires her for it.

After making reports to HR, Stone explains to Southwest that she saw the messages while "waiting to board a flight," and that she "sat in the gate area alone and cried." ROA.23-10836.14774. Finding the messages "incredibly disturbing," as well as "threatening," "obscene and violent," Stone reported them out of

concern that they would "be sent to another flight attendant." *Id.* In addition, Stone was fearful

Stone was also "fearful to return to [her] job as a line-flying Flight Attendant due to repeated personal attacks and threats," citing a message from Carter that she "cant wait to see you back on line" coupled with other physical threats made against Stone on Facebook, including pictures of her with a knife to her head. ROA.23-10836.14847-14848; *see also* ROA.23-10836.11950-11951.

In response, Southwest's Employee Relations team conducted a factfinding meeting with Carter. ROA.23-10836.11408, 14887. Carter, represented by a Local 556 representative, ROA.23-10836.14905, told Southwest that she is "Christian" and "pro-life" and that abortion "is a huge issue" for her, ROA.23-10836.14887. Carter said she has a "deep, deep want to get the word out" about abortion to "more and more people [to] see what actually happens." *Id.* She explained that, "as a Christian, if [she] can get the word out in any way, to every group as possible to touch [abortion]," she will. ROA.23-10836.14888. Carter further explained that she accused Stone of supporting murder because Local 556 attended the Women's March. ROA.23-10836.14892.

Southwest's Employee Relations team concluded that "[Carter] used Facebook Messenger to send [Stone] videos which depicted abortions and pictures of women dressed as vaginas." ROA.23-10836.15004. The team noted that Carter

"explained she did so because she is a 'Christian and a Conservative'" and because Stone "participated in the National Women's March in Washington, D.C." *Id.*

As a result of the investigation, Southwest sent Carter a termination notice. ROA.23-10836.11408, 15007. The notice explained that Carter admitted she had posted graphic videos on Facebook, where she was identifiable as a Southwest employee, and that she sent graphic videos of aborted fetuses and an image of people wearing vagina costumes to a coworker. Carter "agreed that the pictures and videos were graphic." ROA.23-10836.15007. Southwest determined that Carter's Facebook posts were "highly offensive" and that her messages to Stone were "harassing and inappropriate." *Id.* Southwest thus concluded that Carter's conduct was "in direct violation of the Southwest Airlines Mission statement," "Workplace Bullying and Hazing Policy," and "Social Media Policy," and that it could violate Southwest's Policy Concerning Harassment, Sexual Harassment, Discrimination and Retaliation. *Id.*

### C. Carter, represented by Local 556, grieves her termination, and the arbitrator sides with Southwest.

In accordance with Local 556's collective-bargaining agreement, Carter filed a grievance challenging her termination, *see* ROA.23-10836.14438, and 23-10836.14708. Two union representatives represented her at the grievance hearing. ROA.23-10836.15157. After the hearing, Southwest offered to reinstate Carter and reduce her termination to a 30-day suspension. ROA.23-10836.12571-12572,

14708. Carter rejected the offer, ROA.23- 10836.2357, and the parties proceeded to arbitration, ROA.23-10836.14439.

After a two-day hearing involving 32 exhibits and testimony from nine witnesses, the arbitrator concluded that it was "clear beyond a reasonable doubt that [Southwest] had just cause to terminate [Carter]" because Carter violated the Social Media Policy, the Workplace Bullying and Hazing Policy, and the Harassment Policy. ROA.23-10836.3159. Each of the policy violations was "an independently sufficient basis for termination." ROA.23- 10836.3161.

## STANDARD OF REVIEW

The Court reviews questions of law de novo and asks "whether a 'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d 374, 377–78 (5th Cir. 2015)

The Court also reviews de novo the "legal conclusions underlying jury instructions," *United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 481 (5th Cir. 2015), including "question[s] of statutory construction," *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 388 (5th Cir. 2017). Reversal is warranted if the challenged instructions "affected the outcome of the case." *Jowers v. Lin- coln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010). Similarly, the Court will find reversible error for failure to give a requested jury instruction if the re- quested

instruction "1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim]." *Baisden v. I'm Ready Products, Inc.*, 693 F.3d 491, 505 (5th Cir. 2012).

## ARGUMENT AND AUTHORITY

**I.    The jury's verdict on Carter's Railway Labor Act claim must be reversed as the district court incorrectly instructed the jury that the RLA protects obscene and abusive activity.**

The District Court's incorrect jury instruction on what is and is not "protected speech" under the Railway Labor Act is central to the entire trial and all liability findings by the jury. The Court's jury instruction disregards decades of precedent, instructing that essentially all speech is protected, undermining the entire verdict and necessitating a new trial. For if all speech is protected under the RLA, then a Union Officer is forever stripped of their own federally protected rights to be free of harassment by a fellow employee, including reporting them to their employer for workplace violations.

Indeed, Local 556 sought special instructions on this issue, requesting that the jury instructions explicitly provide that Local 556 President Stone's federally protected rights to be free from harassment are not subservient to the rights of Carter. ROA.23-10008.12920-21; ROA23-10008.12936-7; and ROA.23-

10008.12986-94. The ripple effect of this error extends to Carter's Title VII claims, belief and practice, undermining Local 556's arguments for the motivations behind their efforts to report Carter's behavior to Southwest, thus tainting their defense that Local 556's efforts were not predicated upon religious bigotry.

**A.     The RLA does not protect obscene and abusive activity.**

Carter's offensive and harassing emails are not "protected free speech." The Railway Labor Act, Section 152 Fourth protects employees' rights to "organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152 Fourth. Nevertheless, "organizing activity may be 'so flagrant, violent or extreme' or so 'egregious,' 'opprobrious,' 'offensive,' 'obscene' or 'wholly unjustified' that it loses the protection of the RLA." *Konop v. Hawaiian Air- lines, Inc.*, 302 F.3d 868, 883 n.11 (9th Cir. 2002) (quoting *Reef Industries v. NLRB*, 952 F.2d 830, 837 & n.19 (5th Cir. 1991)).

The district court denied Local 556's requested instruction however, giving the *opposite* instruction, telling the jury that "abusive, insulting, or hyperbolic [conduct] *is* protected activity." ROA.23-10836.13399-13400 (emphasis added), and ROA.23-10008.12932-36. That was error, and Carter's counsel repeatedly exploited the error in closing and rebuttal statements before the jury, prejudicing Local 556.

**B. The district court's protected activity instruction was legally wrong and prejudiced Local 556.**

1.      **The incorrect jury instruction.**

To justify its incorrect instruction, the district court pointed to *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 61 (1966), which cited several **NLRB** decisions "tolerat[ing] intemperate, abusive and inaccurate statements made by the union during attempts to organize employees." Ironically, the court rejected Local 556 and Southwest's proposed instructions because their instructions came from the NLRA, refusing to "judicially shoehorn" the NLRA into the RLA. ROA.23-10836.10413. In reality, *the district court's* instruction came from the NLRA—or, to be more precise, an outdated and overruled interpretation of the NLRA. In any event, the district court's purported refusal to look to the NLRA for guidance on the RLA was wrong

When interpreting whether or not to protect speech or conduct, the Supreme Court has turned to caselaw interpreting Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, which also protects the right to join, organize, and assist in joining a labor organization. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 385 & n.20 (1969); *see TWA*, 489 U.S. at 432-34. The Supreme Court has indeed held that NRLA decisions can be "helpful in deciding cases under the RLA," *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426, 432-33 (1989).

In the five decades since *Linn*, the NLRB has significantly modified the NLRA standard proposed by the Court. Not long thereafter the *Linn* decision, In *Atlantic Steel Co.*, the NLRB ruled that "even an employee who is engaged in concerted protected activity can, by opprobrious conduct, lose the protection of the [NLRA]." 245 NLRB 814, 816 (1979). The Board reasoned that it would not be "consistent with the [NLRA]" to protect union related speech presented "in an obscene fashion without provocation and in a work setting where such conduct was not normally tolerated." *Id.* at 817.

Moving into the 21st century, the idea that all speech was not protected under the RLA was further solidified. Even otherwise protected "speech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing." *Held v. Am. Airlines, Inc.*, 2007 WL 433107, *7 (N.D. Ill. Jan. 31, 2007) (citing *TWA*, 489 U.S. at 440). In addition, an employee's protected activity "may give way when 'special circumstances' override the employees' [] interests[.]" *Leiser Constr., LLC*, 349 NLRB 413, 415 (2007). Special circumstances may include, inter alia, situations in which the protected activity is "vulgar or obscene[,] [] may 'exacerbate employee dissension' or situations in which restriction ... 'is necessary to maintain decorum and discipline among employees.'" Id. "Where an employee engages in indefensible or abusive misconduct during otherwise protected activity, the employee forfeits the

[NLRA's] protection." *Daimler Chrysler Corp.,* 344 NLRB 1324, 1329 (2005). Indeed, this is the language sought by Local 556. ROA.23-10008.12932-36. See also ROA.23-10008.12993-94

### 1. **Carter's counsel exploits the prejudice.**

In closing statements, Carter's counsel focused on the jury instructions and the notion that Carter's conduct was "protected speech" even if it was "really offensive." ROA.23-10836.13439. On rebuttal, Carter's counsel twice returned to the erroneous instruction, claiming the activity "is protected if it is intemperate, abusive, insulting, or hyperbolic," ROA.23-10836.13549, "even if it is ... as over the top as you can come up with abusive," ROA.23-10836.13551-13552. That instruction was wrong, and Carter's counsel exploited it to great effect. A new trial is required.

### 2. **If the speech is not "protected," there is no evidence that Local 556 violated its Duty of Fair Representation to Carter, undermining the Jury's liability finding on this issue.**

Carter's counsel confirmed during pre-trial conference that the act of turning in Carter by Union President Stone is the "crux" of the Duty of Fair Representation, and "nothing that the Union did after the fact can really change that." ROA.23-10008.10677-78. If the "crux" of Carter's DFR claim is in and of itself that Local 556 Union President reported her to Southwest, than it necessitates

overturning the jury's liability claim on this issue if the speech is indeed not protected.

**II.    Assuming, *arguendo*, that the Court's incorrect RLA jury instruction does not taint the entire trial, under Title VII, Carter failed to prove religious belief based discrimination as a matter of law. Further the Court refused to give Local 556 an undue hardship instruction while Carter's religious practice does not fall definitionally within the "religion" protected by Title VII.**

Title VII prohibits discrimination "because of" a union member's "religion," 42 U.S.C. § 2000e-2-(a)(1), and defines "religion" to include both religious belief and religious practice, *id.* § 2000e(j). A plaintiff claiming belief based discrimination must prove that her belief was one of her union's motives for discriminating. *See generally University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 343 (2013). Thus, a union discriminates because of belief if it causes or attempts to cause an employee to be fired because she is Jewish. See, e.g. *Dixon*, 627 F.3d at 854. Similarly, an employee can show practice-based discrimination where, for example, the union caused or attempted to cause discharge with the motive of avoiding having to accommodate a religious practice. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

The jury found that Local 556 violated Title VII by causing or ***attempting to cause*** Carter's discharge because of her religious belief and her religious practice of disseminating graphic anti-abortion messages and posts. However, as discussed

above, if Carter's actions are not "protected speech," then there is a legitimate non-discriminatory reason for reporting and ultimately terminating Carter.

As can be expected from the cascading effect of the Court's incorrect RLA jury instruction, none of the jury's findings for Title VII liability stand under black letter law. Carter failed to prove discrimination because of religious belief as a matter of law, and her religious practice does not fall definitionally within the "religion" protected by Title VII.

### A. The District Court erred in instructing the jury that Local 556 violated Carter's Title VII rights by "attempting to cause" Carter's discharge.

First and foremost, it is well settled law that Title VII claims are predicated upon an "adverse employment action." Merely attempting to cause an adverse employment does not meet this well-established bar. Local 556 timely objected to including this verbiage "attempting to cause," but was overruled by the Court. ROA.23-10008.12920-21. Indeed, Local 556 requested the standard verbiage as found within the Fifth Circuits Pattern Jury Instructions, but was overruled. ROA23-10008.12937. The verdict should be overturned.

### 1. The District Court's Judgment assessing damages against Local 556 is not supported by law.

The improper jury instruction regarding causation of termination is intertwined with the idea of awarding back pay damages, and who is responsible for said damages. The parties and Court engaged in lengthy discussion regarding

who is ultimately responsible for backpay damages as well as how those damages would be apportioned to the Defendants upon a finding of liability. Local 556 contended that they are not responsible for any backpay damages (including pre/post judgment interest) if they are not found to have caused Plaintiff's termination. The Court denied Local 556's proposed jury instructions. ROA.23-10008.13010, 13016-24.

Of great import, the record evidences that Local 556 did not impact Southwest's decision to terminate Carter's employment. Multiple Southwest employees testified that Local 556 had no impact on their investigation nor their decision to terminate any employee, including Carter. ROA.23-10008.12563, ROA.23-10008.12579. Conversely, not a single Southwest employee testified that Local 556 impacted their decision to terminate Carter. As Local 556 did not *cause*, Carter's termination, there is insufficient evidence to support a backpay award. Any and all backpay damages (including pre/post judgment interest) should be taxed against Southwest.

### B. Carter's inadequate religious <u>belief</u> claims and evidence.

The jury verdict also cannot stand as to Carter's claim that Local 556 caused or attempted to cause her discharge for her religious belief, because Carter introduced no evidence, direct or indirect, that Local 556 caused or attempted to cause her discharge because of her belief. *See, e.g.*, *Krystek v. University of*

*Southern Mississippi*, 164 F.3d 251, 257 (5th Cir. 1999) (reversing jury verdict because the "evidence [plaintiff] marshals to his cause" was insufficient evidence of discrimination).

### 1. Carter failed to introduce sufficient direct and/or circumstantial evidence of religious belief discrimination.

An employee may introduce "either direct or [indirect] evidence" to show that her union was motivated by a protected characteristic (like her religion) in causing or attempting to cause their discharge. See, e.g. *Nobach*, 799 F.3d at 378 n.6; *see also Portis v. First National Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994). Although a plaintiff can prove a Title VII case with direct evidence alone, a plaintiff with only indirect (*i.e.*, circumstantial) evidence must satisfy the standard set out in *McDonnell Douglas*. *Herster*, 887 F.3d at 184-86.

### a. Carter fails to present any direct evidence of discrimination.

Direct evidence "shows on its face that an improper criterion served as a basis ... for the adverse employment action." *Id.* at 185. Put an-other way, direct evidence, "if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Because direct evidence of discriminatory intent is "rare," *Herster*, 887 F.3d at 185, and "difficult to obtain," the "vast majority of employment discrimination claims will rest on circumstantial evidence," *Luster v. Illinois Department of Corrections*, 652 F.3d 726, 733 (7th Cir. 2011).

Carter offered no direct evidence that Local 556 caused or attempted to cause her termination because of her pro-life Christianity, or even any evidence of animus toward her belief. Carter showed only that Local 556's President, who is evidenced as "personally pro-life", reported Carter to Southwest for repeatedly sending graphic anti-abortion messages and posts. ROA 23-10008.14276. Again, reporting an individual to an employer, ultimately causing a termination, is insufficient as a matter of law to find a violation of Title VII. *See Clark v. Champion National Security, Inc.*, 952 F.3d 570, 580-81 (5th Cir. 2020)(citing Title VII cases); *Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). Again, President Stone's Title VII rights are not subservient to those of Carter.

Analogously, in *Clark*, for example, this Court held that a plaintiff who "fails to point to any statement or document that directly and expressly links his [protected category] to a [union officer's] choice to [cause or attempt to cause to] terminate him" has not provided direct evidence. 952 F.3d at 580. Likewise, in *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 677 (8th Cir. 2013), the court held that an employee's "termination itself" was not "direct evidence of discrimination" against the employee's Pentecostal beliefs, because the "record [did] not contain any evidence of a discriminatory attitude" towards Pentecostals.

**b.  Carter fails to present sufficient circumstantial evidence that she was treated differently than another "similarly situated" employee "under nearly identical circumstances."**

A plaintiff without direct evidence must rely on indirect (*i.e.*, circumstantial) evidence. *See, e.g.*, *Herster*, 887 F.3d at 184. If "an inference is required for the evidence to be probative as to [an employer's] discriminatory animus in firing [an employee], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

"When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas*." *McMichael v. Transocean Offshore Deep-water Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). Under that framework, a plaintiff must show that a union officer's nondiscriminatory explanations for causing or attempting to cause an adverse action are pretextual, *see e.g. McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), by showing that the union did not take that action against "other 'similarly situated' employees for 'nearly identical' conduct," *Vaughn*, 665 F.3d at 637. The plaintiff cannot prevail if she fails to produce evidence regarding similarly situated employees, also known as "comparators." *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d at 426-27 (5th Cir. 2017). Thus, when a union offers a legitimate reason for causing or attempting to cause an adverse action, firing an employee who

alleges discrimination based on religious belief, the employee must identify comparators. *Id.*

This Court's comparator requirement has been consistently set at an extremely high bar. A Title VII plaintiff must identify at least one coworker outside of their protected class who was treated more favorably "under nearly identical circumstances." *Id.* at 426. That coworker "must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share[] the same supervisor or' have his employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title VII claimant." *Id.*

Carter's evidence fails to make out a pretext claim as a matter of law because she produced no valid comparator evidence. *See Vaughn*, 665 F.3d at 637. Carter introduced no evidence that a similarly situated employee was not reported to Southwest for nearly identical behavior. Because Carter introduced no direct evidence or indirect evidence that Southwest fired her for her religious belief, the verdict cannot stand as to belief-based discrimination.

Notably, Local 556 requested instructions detailing specific "similarly situated" language by the Court, but was denied. As such, error is found here as well. ROA.23-10008.12993

### C. Carter's inadequate religious **practice** claims and evidence.

Title VII itself prohibits the creation of a hostile work environment, *see, e.g.*, *Dediol*, 655 F.3d at 440, so a union cannot permit, much less accommodate, a religious practice that would violate other employees' statutory right to be free from a hostile work environment. Otherwise "Title VII would be at war with itself." *Groff*, 143 S. Ct. at 2296.

Title VII doesn't protect Carter's conduct as religious "practice," because accommodating it would strip union officers from their federally protected rights as employees, to be free from harassment in the workplace. Union officers, similar to Carter, are all employees of Southwest. As discussed above, Local 556 sought special instructions on this issue, requesting that the jury instructions explicitly provide that Local 556 President Stone's federally protected rights to be free from harassment are not subservient to the rights of Carter. ROA.23-10008.12920-21; ROA23-10008.12936-7; and ROA.23-10008.12986-94. This instruction was denied.

While a union cannot cause or attempt to cause an employee to be fired for her belief, it can cause or attempt to cause an employee's discharge because of her religious practice when accommodating that practice would impose an undue hardship on the Union's business. *See, e.g.*, *Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013) (undue hardship to accommodate Sikh employee who requested to wear a ceremonial sword to work). In such a case, the employee's

religious practice does not fall definitively within the "religion" protected by Title VII. 42 U.S.C. § 2000e(j). This notion of undue hardship tracks parallel to the Supreme Court's holdings that not all speech is protected under the RLA. Indeed, Local 556 sought jury instructions regarding undue hardship, but were denied by the District Court. ROA.23-10008.12993-94. This is also reversible error.

If an employee's practice might create a hostile work environment for other employees, accommodating it would impose an undue hardship, meaning the practice is not protected. As the Ninth Circuit explained "an employer need not accommodate an employee's religious beliefs if doing so would result in discrimination against his co-workers or deprive them of contractual or other statutory rights." P*eterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004).

Local 556 President Stone explained that she "found [Carter's] messages to be incredibly disturbing, ... obscene and violent, as well as threatening." ROA.23-10836.14774. Another employee testified that after watching the video, she "felt physically ill," "had to get up from [her] desk and exit the building," and "walk[] around the building several times before [she] came back in." ROA.23-10836.12798. A third employee said she felt "horrified by the images because ... it felt like an exploitation of something very personal and horrific and it made [her] feel queasy" and "ruined [her] day." ROA.23- 10836.12998. And a senior manager testified that she "hated" the videos, finding them "very impactful," "ugly," and

"disgusting. That's just the tip of the iceberg .... It made me feel sick." ROA.23-10836.13035-13036.

The conflict between Title VII and alleged "protected speech" under the RLA highlights the cascading effect of the District Court's improper jury instruction pertaining to Carter's RLA claims, and how the improper jury instruction tainted the additional findings of liability.

## III.    The District Court's Permanent Injunction is Overly broad and Vague, and she be overturned as such.

Rule 65 of the Federal Rules of Civil Procedure requires an injunction to be "specific in terms; [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." *Doe v. Veneman,* 380 F.3d 807, 818 (U.S. 2004). "The scope of injunctive relief is dictated by the extent of the violation established. . . ." *Id.* The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order. *Id.* An injunction fails to meet these standards when it is overbroad or vague. *Id.*

Injunctions must be narrowly tailored within the context of the substantive law at issue to address the specific relief sought. *E.T. v. Paxton,* 19 F.4th 760, 769 (5th. Cir. 2021); (quoting *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). This means that an injunction cannot "encompass more conduct than was requested or exceed the legal basis of the lawsuit." *Id.* at 214 (citing *Veneman*, 380 F.3d at 819).

For example, in *E.T. Paxton*, the Fifth Circuit overturned the district's injunction as overbroad and vague because, *inter alia,* the injunction should have been tailored to address only the seven plaintiffs in the action, as well as their school districts. *E.T. v. Paxton,* 19 F.4th 760, 769 (5th. Cir. 2021). In fact, a basic policy against enjoining the activities of labor unions is expressed in the NLGA. *Burlington Northern R.R.*, 481 U.S. at 437; *see also*, 29 U.S.C. § 104; (*see*, *Burlington Northern & Santa Fe Ry. v. Brotherhood of Maintenance of Way Emples.*, 1998 U.S. Dist. LEXIS 22879, *11).

The Court's Injunctive relief reads as follows:

(1) "Accordingly, the Court **ENJOINS** Defendants from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. *See Meyer*, 661 F.2d at 374 (recognizing, in the Title VII context, that "[i]njunctive relief which benefits non-parties may sometimes be proper"); and

(2) The Court **ENJOINS** Defendants from failing to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances.

In the case at bar, the district court's injunction is overly broad and vague as applying to any Southwest flight attendant, circumventing the necessary

administrative safeguards should a disgruntled employee/union member decide to seek violation of the overly broad and vague injunctive order. In addition, the Court's injunction has no time constraint, is not limited to the Plaintiff, and is overreaching in that the alleged bad actor, Local 556 President Stone, is no longer a union officer. Local 556 seeks this portion of the Court's Judgment be overturned as a matter of law.

## CONCLUSION

The Court should reverse the judgment and verdict with instructions to enter judgment in Local 556's favor on Carter's RLA, DFR, and her relief-based claims under Title VII, for a new trial on Carter's practice-based claim under Title VII, and conclude that any backpay damages must be paid by Defendant Southwest.

Dated: November 14, 2023          */s/ Adam S. Greenfield*
                                  Adam S. Greenfield

                                  *Counsel for Defendant-Appellant Local 556, TWU*

                                  Law Offices of Cloutman & Greenfield, PLLC
                                  6217 Bryan Parkway
                                  Dallas, TX 75214
                                  State Bar No. 240 754 94
                                  Email: agreenfield@candglegal.com
                                  Phone: 214-642-7486

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 30, 2023, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that I re-filed this version of briefing on November 14, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

Dated: November 14, 2023       */s/ Adam S. Greenfield*
Adam S. Greenfield

*Counsel for Defendant-Appellant Local 556, TWU*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 5,480 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

2.      This brief complies with the typeface requirements FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it uses a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font for text, and 12-point font for footnotes.

3.      This brief complies with the privacy-redaction requirement of Fifth Circuit Rule 25.2.13. Personal identifiers are redacted in accordance with the rules.

4.      This brief complies with the electronic-submission requirement of Fifth Circuit Rule 25.2.1 because it is an exact copy of the paper document.

Dated: November 14, 2023          */s/ Adam S. Greenfield*
                                 Adam S. Greenfield

                                 *Counsel for Defendant-Appellant Local 556, TWU*